IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

DANIEL CHAVEZ,

  Plaintiff,

vs.               No.Civ. 97-0657 LH/WWD

KENNETH S. APFEL,[1] COMMISSIONER
of SOCIAL SECURITY,

  Defendant.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS
## AND RECOMMENDED DISPOSITION
### Proposed Findings

  1. This matter comes before the Court upon plaintiff's Motion to Reverse and Remand for a Rehearing, filed March 3, 1998 [5-1]. The Commissioner denied plaintiff's request for Social Security Disability Insurance. Plaintiff was 53 years old at the time of the administrative hearing. He has a high school diploma through a GED as well as fifteen college credits, and has worked as a janitor, a butcher, meat packer, yard maintenance man, and tank driver while he was in the National Guard. Mr. Chavez alleges a disability which commenced March 30, 1994, which is when he last worked.

  2. After conducting an administrative hearing, the Commissioner's Administrative Law Judge ("ALJ") denied plaintiff's application and determined that he had the residual functional

---

[1] President Clinton appointed Kenneth S. Apfel Commissioner of Social Security as of August 29, 1997. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Kenneth S. Apfel should be substituted as defendant for Acting Commissioner John J. Callahan, who was the appropriate party at the time of the underlying decision. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

capacity to perform a full range of light work, although he could not return to his past relevant work as a maintenance or yard worker. Relying on the grids, the ALJ concluded that plaintiff was not disabled. The Appeals Council denied Mr. Chavez' request for review of the ALJ's decision, thus the ALJ's decision is the final decision of the Commissioner. Plaintiff now seeks review of that final decision pursuant to 42 U.S.C. §405(g).

    3.   The standard of review in social security appeals is whether the Commissioner's final decision, in this case the ALJ's decision, is supported by substantial evidence. Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993) (citations omitted). Additionally, the Commissioner's final decision can be reversed if the ALJ failed to apply the correct legal tests. Id. (citation omitted).

    4.   Plaintiff raises the following allegations of error with respect to the ALJ's decision: (1) that the ALJ failed to properly develop the record; (2) that the ALJ failed to consider all relevant medical evidence submitted; (3) that the ALJ's finding that plaintiff's pain is not disabling is in error; and (4) that the ALJ failed to evaluate the combined effect of all impairments on plaintiff.

    5.   "To qualify for disability benefits, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity." Thompson at 1486 (citing 42 U.S.C. §423 (d)(1)(A)). Social Security Regulations require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications. Id.; see 20

C.F.R. § 404.1520(a - f). The sequential evaluation process ends if at any step the Commissioner finds that the claimant is disabled or not disabled. Id. (citations omitted).

6. At the first four levels of the evaluation, the claimant must show: (1) that he is not working; (2) that he has an impairment or combination of impairments severe enough to limit the ability to do basic work activities; (3) that the impairment meets or equals one of the listing of impairments in 20 C.F.R. Pt. 404, Subpt.P, App.1; or (4) that he is unable to perform work done in the past. At the fifth step, the Commissioner must produce evidence regarding the claimant's ability to perform other work. Reyes v. Bowen, 845 F.2d 242, 243 (10th Cir. 1988).

7. Mr. Chavez lives with his wife and his fourteen year-old youngest son. Tr. at 129, 141. He injured his back while working at a meatpacking plant from 1963 to 1974, and reinjured it after returning to work. Id. He also sustained injuries while working as a maintenance man for a church in 1990 and 1992, once when he fell from a roof and another time when a crate fell on top of him. Tr. at 132.

8. Plaintiff had carpal tunnel surgery on his right hand in April 1994, Tr. at 96, 104, and back surgeries (discectomies) in 1975 and 1980, for which he received Social Security for a year and a half. Tr. at 138, 151. He complains that his wrists are in "extreme pain all the time," and that the "biggest pain" is in his neck and shoulders. Tr. at 135, 146. He also complains of "a lot of numbness" in the fingers on both hands, as well as tingling and stiffness in the wrists and finger joints. Mr. Chavez still sees his treating physician, Dr. Jose Velez, for his wrist, neck and shoulder pain every one to three months. Tr. at 137. At the hearing, he stated that he wakes up with "severe" headaches two to three times a week. Tr. at 135, 152. Darvocet relieves the pain after a few hours. Tr. at 153.

9. At the hearing, plaintiff said that he does not help his wife with any household chores, and that the shopping is "too heavy" for him. Tr. at 141. He is responsible for his own hygiene,

but his wife sometimes has to help with buttons and zippers, or putting on socks and shoes because of the neck and wrist pain. Tr. at 151. Mr. Chavez no longer plays sports with his son, but does go his ball games. Tr. at 141.

10. On a typical day, he rises and showers, sits for a while and reads scripture, eats breakfast, and spends about an hour in church every other day. Tr. at 147. Most of plaintiff's day is taken up with church-related activities. He visits the elderly from his church in their homes or hospital almost every day, Tr. at 141-42, 148, and participates with his wife in church activities, such as baptismal programs. Tr. at 141-42. These visits last from 30 to 40 minutes, usually at an elderly person's home.[2] Plaintiff testified that he naps for about an hour three times a week because he did not sleep well at night. Tr. at 149.

11. Mr. Chavez stated that he is able to drive for about 40 minutes before he has to stop to relieve the pain in his wrists and neck. Tr. at 140. He can walk about a mile, but usually only a half mile, can sit or stand for 40 minutes and cannot lift over ten pounds without pain in the inguinal area. Tr. at 142-43. Although he had five inguinal hernia repairs performed in the early to mid-1990's, he still complains that the area becomes painful when he walks for a long time or tries to lift something as heavy as a ten-pound sack of potatoes. Tr. at 136.

**First Alleged Error - Failure to Develop Record**

12. Plaintiff alleges that the ALJ failed to properly develop the record with regard to

---

[2] Plaintiff told the ALJ he made these visits generally every day, but later specified that the hospital visits took place about twice a week. Tr. at 150. In response to questions posed by his representative, plaintiff stated that the church classes were one meeting per month for the baptismal classes, and one per week for the marriage enrichment programs, which culminated in a three-day program. Tr. at 150-51.

alleged anxiety and depression. As the ALJ correctly noted in his decision, most of the evidence for the impairment comes from plaintiff's own testimony, which is not sufficient by itself as evidence. 20 C.F.R. § 404.1528(a); 416.928; Bernal v. Bowen, 851 F.2d 297, 300 (10th Cir. 1988).

13. The ALJ also noted that until the request for rehearing, the record did not contain any evidence at all about depression or anxiety. Tr. at 13, 70. However, even plaintiff's statements of being under "pressure and stress" prior to this time, Tr. at 75, do not constitute evidence of a mental impairment because they also are uncorroborated by any medical findings.

14. Mr. Chavez also stated that he experienced a "very bad depression" in 1994 when he found out that he no longer had a job at the church. He testified that 1995 was a hard year for him with respect to depression, in that he had suicidal thoughts during this time. Tr. at 150. He started seeing a priest for counseling because he could not afford to see a doctor, although he admitted to the ALJ that he never tried to find out whether his insurance would cover it. Id.

15. Mr. Chavez testified that in November 1995, Dr. Steven Haynes, the physician who treated him for his hernia, prescribed Lorazepam for his "anxiety." Tr. at 144. He described his "anxiety" symptoms as a "real bad itch" on his body that makes him "want to get out and just roll around or whatever." Tr. at 144-45. According to the plaintiff, Dr. Haynes said that the itch came from anxiety. Tr. at 145.

16. In his decision, the ALJ stated that it appeared that plaintiff had returned to Dr. Haynes for treatment of a prostate problem and had received a prescription for an antibiotic and for "one tablet daily of Lorazepam." Tr. at 13. However, the ALJ noted that the record did not contain any of Dr. Haynes reports having to do with prescribing the Lorazepam. Yet, on the

Psychiatric Review Technique Form ("PRT"), the ALJ left blank the "Affective Disorders" category, under which is included "thoughts of suicide." Although it was not incorrect for the ALJ to complete this form himself, the record must still contain "substantial competent evidence to support the conclusions reached on the PRT form. . . ." Winfrey v. Chater, 92 F.3d 1017, 1023 (10th Cir. 1996).

17. Given that there was mention of this medical visit to Dr. Haynes, and that these records appear to be the only objective corroboration to possibly support plaintiff's allegations of depression and anxiety, the ALJ should have inquired further, if only to obtain these particular records. See Carter v. Chater, 73 F.3d 1019, 1021 (10th Cir. 1996) (ALJ has a basic duty of inquiry to fully and fairly develop the record as to material issues).[3] The ALJ should not have proceeded to make findings about the effect of the impairment without first examining these records, if they do exist. On remand, the ALJ should re-evaluate Mr. Chavez' alleged depression and anxiety in light of these records.

**Second Alleged Error - Consideration of Relevant Medical Evidence**

18. Plaintiff contends that the ALJ failed to consider all relevant medical evidence submitted, in particular, his severe itch which becomes worse at night and esophageal varices. On the contrary, I find that the ALJ's decision is replete with a careful examination of Mr. Chavez' various medical reports and treatment notes.

19. Plaintiff's esophageal varices were part of the findings noted during his work-up for ulcers. In September 1995, he was diagnosed with a duodenal ulcer which was treated

---

[3] Plaintiff was represented at the hearing by a non-attorney, which in this case heightened the ALJ's duty of inquiry. Musgrave v. Sullivan, 966 F.2d 1371, 1374 (10th Cir.1992).

conservatively with Prilosec.  By December, Dr. Steven Block found that it was no longer active. Tr. at 115.[4]  Also by December, when the 1+ esophageal varices were noted, Mr. Chavez told another treating physician, Dr. Khan, that he was "feeling much better" and that "he did not have any abdominal pain anymore."  Tr. at 116-17.

20.  Because an impairment that can reasonably be remedied or controlled by treatment cannot support a finding of disability, see Pacheco v. Sullivan, 931 F.2d 695, 698 (10th Cir. 1991), the ALJ gave proper consideration to the esophageal varices medical findings.

21.  The ALJ was justified in discounting plaintiff's severe itch as a subjective complaint. There is absolutely nothing in the record, either in medical reports or in plaintiff's statements to any doctor, about this symptom. There is only plaintiff's statement that it exists and that Dr. Haynes associated it with anxiety and prescribed Lorazepam for relief.  Further, the record contains no information or evidence which would connect the symptom to any functional limitations affecting Mr. Chavez' ability to work.  Because I recommend that this case be remand on other grounds, this symptom may be considered as part of the inquiry related to plaintiff's mental impairment, if plaintiff's testimony can be corroborated.[5]

22.  The ALJ appropriately and carefully considered all the other medical evidence.  He examined the reports of plaintiff's treating physician, Dr. Jose Velez, regarding plaintiff's complaints of headache, Tr. at 12, and carpal tunnel syndrome, Tr. at 14.  The ALJ ultimately

---

[4] Several of plaintiff's hernial repairs and surgeries were done secondary to a knife wound.  Tr. at 109.

[5] I am recommending remand on plaintiff's first alleged ground for error not because of the severe itching, but because of the possibility that objective medical evidence exists which pertains to an alleged mental impairment.

concluded that the severity of his headache symptoms were irreconcilable with the objective medical evidence,[6] including plaintiff's denial of such symptoms on one occasion, and plaintiff's statement of daily activities.  Tr. at 12, 109.

23.  Following surgery for carpal tunnel release on his right hand, plaintiff's symptoms in that hand improved to the point that it felt "very good" in July 1994.  Tr. at 103.  When Mr. Chavez's symptoms persisted in his left hand, Tr. 102-03, Dr. Velez did not recommend surgery, as there was no evidence of lower motor neuron lesion.  Tr. at 14.  He continued to treat plaintiff conservatively, prescribing Extra Strength Tylenol and Darvocet, but took him off oral anti-inflammatory medications because of past history of ulcers.  Tr. at 120.

24.  Dr. Velez acknowledged that plaintiff would have "permanent restrictions" in activities due to his upper extremity and spinal problems (from past back surgeries).  Tr. at 102.  For this reason, Dr. Velez ordered functional capacity evaluations ("FCE") done in December 1994 and May 1995 to determine plaintiff's functional restrictions. The results of both FCE's were the same: plaintiff could sit for 2 hours at a time for a total of 6 hours; he could stand or walk for 3 hours for a total of 7 hours; he could lift up to 20 pounds frequently and 21 to 50 pounds occasionally, and engage in light to medium intermediate activities.  Tr. at 100, 101.  These abilities reflect at least an ability to do light work under social security regulations and actually track the requirements for medium work.[7]  However, the ALJ, noting that plaintiff's

---

[6] Dr. Velez could find "no explanation" for plaintiff's headaches.  Tr. at 102.

[7] Light work involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds, requires a good deal of walking, standing, or pushing and pulling when sitting is involved.  SSR 83-10; 20 C.F.R. § 404.1567(b).  Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds.

limited range of motion in his neck precluded him from a full range of medium work, Tr. at 100, concluded that he could perform a full range of light work. Tr. at 15.

25. I find that the ALJ's review of the medical evidence was exhaustive and painstaking, and that all the relevant medical evidence was considered. In addition, the ALJ's findings in this regard were based on substantial evidence.

**Third Alleged Error - Nonexertional Impairments**

26. Next, plaintiff alleges that the ALJ's finding that plaintiff's pain is not disabling is in error. Plaintiff basically disputes the ALJ's credibility analysis, which I find followed the correct legal standard and was based on substantial evidence. The ALJ noted the existence of "symptom-producing medical problems," according to the standard set out in Luna v. Bowen, 834 F.2d 161, 165 (10th Cir. 1987) and then investigated all avenues presented that relate to subjective complaints,[8] including medical data and other objective indications of the degree of the pain, and subjective accounts of the severity of the claimant's pain, Luna, 834 F.2d at 164. Tr. at 16. He concluded that "plaintiff's pain is not as severe as alleged." Tr. at 16.

27. He also felt that Mr. Chavez exaggerated the symptoms and functional limitations his impairments produced. Id; see Frey v. Bowen, 816 F.2d 508, 517 (10th Cir. 1987) ("some claimants exaggerate symptoms for purposes of obtaining government benefits, and deference to the factfinder's assessment of credibility is the general rule"); see also Thompson, 987 F.2d at 1489 (quoting Hargis v. Sullivan, 945 F.2d 1482, 1489 (10th Cir.1991) (when determining the

---

[8] These include the nature, location, onset, duration, frequency, radiation and intensity of pain; aggravating factors, adverse side effects of medications, treatment, other than medication, for relief of pain, functional restrictions; and claimant's daily activities. SSR-88-13; see Luna v. Bowen, 834 F.2d 161, 166 (10th Cir. 1987).

credibility of pain testimony, the ALJ should consider subjective measures of credibility that are peculiarly within the judgment of the ALJ)).

28. Taking into account plaintiff's daily activities, the ALJ noted that these also were inconsistent with his symptoms of disabling pain. Tr. at 15. Mr. Chavez started the morning by walking one to two miles, helped out with light housework and cooking, did light yard work and washed outside windows, regularly visited shut-ins and the sick, and regularly participated in other church activities. Tr. at 78.[9]

29. Moreover, as the ALJ noted, Tr. at 15, plaintiff's own physician recommended that Mr. Chavez retrain and start a "new type of work" because of the functional limitations which precluded him from past relevant work at a medium level. Tr. at 15; see Kelley v. Chater, 62 F.3d 335, 338 (10th Cir. 1995 ("No physician has opined that [plaintiff] is disabled, and, in fact, three physicians have opined that he retains the ability to perform at least some sedentary work").

30. Plaintiff may well suffer from some pain. However, the fact that he experiences pain does not necessarily mean he is disabled under social security regulations. A finding of "disability requires more than mere inability to work without pain." Brown v. Bowen, 801 F.2d 361, 362-63 (10th Cir. 1986) ("To be disabling, pain must be so severe, by itself or in conjunction with other impairments, as to preclude any substantial gainful employment"). In this case, the ALJ's credibility determination regarding the degree to which plaintiff's impairments were disabling was

---

[9] Plaintiff described these activities in a daily activities reported completed in June 1995. His testimony at the hearing, about eight months later, was somewhat different. See ¶ 9, above. However, inconsistencies which arise within a credibility inquiry are for the ALJ to resolve. Winfrey v. Chater, 92 F.3d 1017, 1020 (10th Cir. 1996) (credibility determinations are peculiarly the province of the finder of fact and are not upset when supported by substantial evidence).

conducted properly, was thorough, and based on substantial evidence.

**Fourth Alleged Error - Combined Effect of Impairments**

      31.   Finally, plaintiff claims that the ALJ failed to evaluate the combined effect of all impairments on plaintiff. The ALJ does have a duty to make specific and well articulated findings as to the effect of the combination of impairments. See Hawkins v. Heckler, 600 F.Supp. 832, 837 (D.Kan. 1985). Here, however, the ALJ spent almost two and a half pages analyzing the medical evidence pertaining to *two* different listings: for disorders of the spine, and for peripheral neuropathies. See 20 C.F.R. Pt.404, Subpt.P, App. 1, §§ 1.05, 11.14.

      32.   The ALJ specifically considered diagnostic tests, medical reports, treatment notes, and results from the functional capacity assessments. Tr. at 13-15. This discussion of various impairments together with a consideration of plaintiff's testimony is sufficient to demonstrate that the ALJ did consider the combined effect of these impairments. Campbell v. Bowen, 822 F.2d 1518, 1521 (10th Cir. 1987). Based on the evidence in the record, the ALJ was not in error for failing to give more weight to plaintiff's esophageal varices, as discussed above. However, because on remand the ALJ is directed to inquire into records which may contain evidence of anxiety and depression, I defer a ruling only as to the ALJ's consideration of these impairments in combination with plaintiff's other impairments.

      33.   In sum, I find that (1) the ALJ failed to properly develop the record only in that he should have requested Dr.Haynes recent medical reports concerning plaintiff's mental impairments of anxiety and depression; (2) the ALJ properly considered all relevant medical evidence submitted; (3) the ALJ's finding that plaintiff's pain is not disabling was not in error; and (4) that the ALJ adequately evaluated the combined effect of all impairments on plaintiff, except

that I make no finding concerning a consideration of plaintiff's alleged depression and anxiety at this level of inquiry.

## Recommendation

I recommend that plaintiff's Motion to Reverse and Remand for a Rehearing [5-1] be granted and that this matter be remanded to the Commissioner in order to obtain Dr. Haynes' recent medical reports which concern plaintiff's mental impairments of anxiety and depression and which are connected to Dr. Haynes' prescription of Lorazepam. If necessary, the Commissioner is directed to obtain a psychological consult. Based on the findings in the record and including Dr. Haynes' reports, the Commissioner shall also consider plaintiff's' alleged impairments of anxiety and depression in combination with other impairments. Timely objections to the foregoing may be made pursuant to 28 U.S.C. § 636(b)(1)(C).

UNITED STATES MAGISTRATE JUDGE